**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAIMON WILLIAMS**                                      **CIVIL ACTION**

**VERSUS**                                              **NO.  05-0086**

**JAMES MILLER, JR., WARDEN,**                          **SECTION "B"(4)**
**CHARLES FOTI, ATTORNEY GENERAL**
**FOR THE STATE OF LOUISIANA**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations

pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules**

**Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that

this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

**I.      Factual Background**

The petitioner, Daimon Williams ("Williams"), is serving a 30 year sentence in the custody

of the Louisiana Department of Corrections in the Washington Correctional Institute in Angie,

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

Louisiana on his conviction for possession of cocaine.[2]  The record provided by the respondent reflects that Williams was charged by Bill of Information in Jefferson Parish on May 4, 2001, with one count of possession of cocaine.[3]

The record also reflects that, on March 30, 2001, Officer Raymond J. Lassiegne, and his partner, Officer Sarah Goodwin, were both assigned to the Community Policing Section ("COPS") of the Gretna Police Department, which targeted specific neighborhoods to eliminate drug activity and other problems in those neighborhoods.[4]  The officers were patrolling the Suburban Park area of Gretna, Louisiana, in a marked police unit.  At about 4:00 p.m. that afternoon, the officers turned north from Kepler Street onto LeBoeuf Street and Officer Lassiegne observed two black males, one of whom was Williams, standing in front of an apartment complex on the corner of LeBoeuf Street and Solon Street.  Both men looked up at the police car, turned away quickly, and started walking up Solon Street toward the Westbank Expressway.

Officer Lassiegne thought their behavior was suspicious.  He turned onto Solon Street and, when Williams saw the police car, he ran.  The other man continued to walk.  Williams, however, ran across a parking lot toward a building.  Officer Lassiegne followed him and saw him throw an object, with his right hand, into the bushes near the corner of the building.  Williams continued to run for a while and then suddenly stopped.

Officer Lassiegne caught up with Williams and detained him.  By that time, the other man, later identified as Daimon Williams's nephew, Michael Williams, reached the parking lot and, at

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 5/4/01.

[4]The facts were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Williams*, 841 So. 2d 936, 938-940 (La. App. 5th Cir. 2003); St. Rec. Vol. 1 of 5, 5th Cir. Opinion, 02-KA-1016, 2/25/03.

Officer Lassiegne's instruction, walked toward his police car.  Officer Lassiegne checked the two men for weapons and found none.  Detective Russell Lloyd, a Group Supervisor of the Narcotics Division of the Gretna Police Department, arrived at the scene to assist Officer Lassiegne.

Detective Lloyd stayed with the two men at the police unit while Officer Lassiegne retrieved the object that Williams had thrown in the bushes.  Officer Lassiegne recovered a clear plastic bag, which contained small, off-white colored rocks, which later testified positive as cocaine.  At that time, Williams began to struggle and screamed, "That's not mine, that's not for me, that's not for me."  The officers restrained the defendant and handcuffed him without further incident.

Williams was tried before a six person jury on February 13 and 14, 2001, and was found guilty as charged.[5]  On September 25, 2001, the Trial Court sentenced Williams to five years at hard labor.[6]

Later, on September 27, 2001, the State filed a Multiple Bill charging Williams as a multiple offender.[7]  On April 23, 2002, the Trial Court found Williams to be a fourth felony offender, vacated the prior sentence, and re-sentenced Williams to serve 30 years at hard labor.[8]  On May 23, 2002, the Trial Court denied without reasons the Motion to Reconsider Sentence filed by Williams's counsel.[9]

---

[5]St. Rec. Vol. 1 of 5, Trial Minutes (2 pages), 9/13/01; Trial Minutes (2 pages), 9/14/01; Jury Verdict, 9/14/01; St. Rec. Vol. 2 of 5, Trial Transcript, 9/13/01; St. Rec. Vol. 3 of 5, Trial Transcript, 9/14/01.

[6]St. Rec. Vol. 1 of 5, Sentencing Minutes, 9/25/01; St. Rec. Vol. 3 of 5, Sentencing Transcript, 9/25/01.

[7]*Id.*; St. Rec. Vol. 1 of 5, Multiple Bill (2 pages), 9/27/01.

[8]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 4/23/02; Sentencing Minutes, 4/23/02; St. Rec. Vol. 3 of 5, Multiple Bill Hearing Transcript, 4/23/02.

[9]St. Rec. Vol. 1 of 5, Motion to Reconsider Sentence, 4/26/02 (order attached and dated 5/23/02).

On appeal to the Louisiana Fifth Circuit, Williams's counsel raised four assignments of error:[10] (1) the trial court erred by failing to order a pre-trial competency hearing; (2) the trial court erred in failing to declare a mistrial premised upon the prosecutor's closing argument reference to Williams's criminal record; (3) the trial court imposed an excessive sentence; and (4) the appellate court should review for errors patent.  The Louisiana Fifth Circuit affirmed the conviction on February 25, 2003, finding that Williams's claims were without merit.[11]

Williams did not seek rehearing or file for timely review in the Louisiana Supreme Court.[12] Therefore, his conviction became final on March 27, 2000, which was 30 days after issuance of the appellate court's opinion and no further appellate review was available.[13]  *See Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

## II.    <u>Procedural Background</u>

Over four months later, Williams filed an untimely[14] Writ Application with the Louisiana Supreme Court seeking review of his appellate claims.  The Application bore a postmark date of July

---

[10] *State v. Williams*, 841 So. 2d at 940; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 02-KA-1016, 2/25/02; St. Rec. Vol. 3 of 4, Assignment of Error, 02-KA-1016, 11/6/02; Appeal Brief, 02-KA-1016, 11/6/02.

[11]*Id*.

[12]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be made within 30 days of the issuance of the judgment.  *See also* La. Code Crim. Proc. art. 922(A).

[13]*Id*.

[14]*See* footnote 12, *supra*.  This Writ Application was postmarked and filed after the 30 day period.

21, 2003 and was filed on August 1, 2003.[15]  The Louisiana Supreme Court denied the application

without reasons on August 20, 2004.[16]

While that Writ Application was awaiting review, Williams filed a Motion to Correct Illegal

Sentence with the Trial Court on October 15, 2003.[17]  Williams, however, later moved to dismiss

the motion and the Trial Court granted his request on November 19, 2003.[18]

Two days later, on November 21, 2003, Williams filed a Uniform Application for Post

Conviction Relief with the Trial Court raising the following grounds for relief:[19] (1) the Trial Court

erred by admitting uncertified, unauthenticated copies of his arrest register at the multiple bill

proceeding; (2) insufficient evidence was used to prove the defendant's identity as the prior felon;

(3) the Trial Court erred in finding him to be a multiple offender; (4) the Trial Court failed to advise

him of his constitutional rights prior to the multiple bill hearing, and; (5) the Trial Court failed to

impose an appropriate fine as part of the sentence.  The Trial Court denied the Application on

December 2, 2003, finding that the claims to be procedurally improper pursuant to La. Code Crim.

P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[20]

---

[15]St. Rec. Vol. 1 of 5, La. S. Ct. Letter, 2003-KH-2205, 8/1/03 (showing the writ to have been postmarked on 7/21/03); St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 03-KH-2205, 8/1/03.

[16]*State ex rel. Williams v. State*, 882 So.2d 571 (La. 2003); St. Rec. Vol. 1 of 5, La. S. Ct. Order, 2003-KH-2205, 8/20/04.

[17]St. Rec. Vol. 1 of 5, Motion to Correct Illegal Sentence, 10/15/03.

[18]St. Rec. Vol. 1 of 5, Ex Parte Motion to Dismiss, 11/6/03, (and handwritten order on page 2 dated 11/19/03).

[19]St. Rec. Vol. 1 of 5, Uniform Application for Post Conviction Relief, 11/21/03.

[20]St. Rec. Vol. 1 of 5, Order, 12/2/03.  In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

Forty days later, on January 13, 2004, Williams filed an untimely[21] Writ Application with the Louisiana Fifth Circuit seeking review of the Trial Court's order.[22]  The Louisiana Fifth Circuit denied the Application on January 16, 2004, finding no error in the Trial Court's ruling.[23]

Williams thereafter sought further review in a Writ Application filed with the Louisiana Supreme Court on March 22, 2004, which was postmarked on February 12, 2004.[24]  In this application, Williams alleged the following grounds for relief: (1) the Trial Court erred by admitting uncertified, unauthenticated copies of his arrest register; (2) there was insufficient evidence to support the multiple offender adjudication; (3) the Trial Court failed to inform Williams of his constitutional rights prior to the multiple offender proceeding; (4) ineffective assistance of counsel during the multiple bill proceeding.[25]  The Court denied the Writ Application without reasons on February 18, 2005.[26]

---

[21]Louisiana law provides a 30 day period to file for review of a trial court's ruling with the circuit court of appeal.  La. App. Rule 4-3; *see also*, La. Code Crim. P. art. 922.

[22]St. Rec. Vol. 1 of 5, 5th Cir. Order, 04-KH-41, 1/16/04.  The filing date of the Writ Application appears on the face of the Order and has been confirmed with the Clerk of the Louisiana Fifth Circuit.

[23]*Id.*

[24]St. Rec. Vol. 1 of 5, La. S. Ct. Writ Letter, 2004-KH-733, 3/23/04 (showing the Writ to have been postmarked on February 12, 2004); St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 04-KH-733, 3/22/04.

[25]For some reason, Williams argues that counsel should not have allowed him to enter a plea of guilty to the multiple bill and should have timely appealed the errors in that proceeding.  The Court notes that Williams did not enter a plea of guilty but instead was adjudicated a fourth offender by the Trial Court after a full evidentiary hearing.  His claim is therefore without factual basis and therefore legally unsound.

[26]*State ex rel. Williams v. State*, 896 So.2d 21 (La. 2005); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2004-KH-0733, 2/18/05.

### III.   __Federal Petition__

On February 1, 2005, Williams filed a *pro se* Petition for Federal Habeas Corpus Relief in which he raised three grounds for relief:[27] (1) the Trial Court erred by admitting uncertified, unauthenticated copies of his arrest register; (2) the evidence was insufficient to support the multiple offender adjudication; and (3) the Trial Court failed to inform Williams of his constitutional rights prior to the multiple offender proceeding.

The State filed an opposition memorandum arguing that Williams's federal petition is untimely filed and the claims are otherwise procedurally defaulted.[28]  Williams filed a reply to the State's opposition memorandum in which urges the Court to disregard the state-imposed procedural bars to review of his claims and argues that his efforts to exhaust state court remedies should be considered in determining the timeliness of his petition.[29]

### IV.   __Standards of Review__

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] applies to Williams's petition, which is deemed filed in this court under the federal "mailbox rule" on October 8, 2004.[31]

---

[27]Rec. Doc. No. 1.

[28]Rec. Doc. No. 6.

[29]Rec. Doc. No. 7.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). The State argues that Williams's petition is untimely and his claims are procedurally barred from review.

## V.      Limitations Defense

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[32] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Williams's conviction became final on March 27, 2003, when he did not seek timely review of his direct appeal. Under the plain language of § 2244, he had until March 27, 2004, to file a timely federal application for

---

for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Williams's federal habeas petition on February 1, 2005, the date on which pauper status was granted. Williams did not date his signature on the petition or the Brief in Support. The envelope in which the pleadings were received bears a postmark date of October 8, 2004. Williams chose not to date his pleadings and he has not presented evidence of any other date to be considered as the filing date under the mailbox rule. Therefore, the postmark date is considered to be the date on which the pleadings were submitted to prison officials for mailing.

[32]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

      A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

      B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

      C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

habeas corpus relief, which he failed to do.  Thus, literal application of the statute would bar Williams's § 2254 petition as of that date unless he is entitled to statutory tolling.[33]

Title 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  In order for a State post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, ___, 125 S.Ct. 1807, 1812 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).

In this case, the State has raised the defense that Williams's petition is untimely because, in relevant part, he is not entitled to tolling for the pendency of his 2004 Writ Application filed with the Louisiana Supreme Court.  A review of the record as outlined in this report reflects that Williams federal petition is in fact timely presented to this Court for the following reasons.

For purposes of this discussion, the Court recognizes that the pendency of the other properly filed state court filings,[34] and the untimely 2004 Louisiana Fifth Circuit Writ Application,[35] allowed only 214 days of the one-year federal filing period to expire.  The crucial pleading is the 2004

---

[33]The law also allows for the consideration of equitable tolling which is not relevant to the Court's analysis.

[34]Williams's first Writ Application to the Louisiana Supreme Court, filed August 1, 2003 and postmarked July 21, 2003, was untimely under La. S. Ct. Rule X§5 and did not toll the AEDPA filing period.

[35]*See Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001) (because La. App. R. 4-3 has exceptions, an untimely appellate writ application can toll the one-year statute of limitations period during the time it was actually pending).

Louisiana Supreme Court Writ Application for determining whether the remaining 151 days expired or were tolled.

In reaching its erroneous time calculation, the State argues that the file stamp date of March 22, 2004, on Williams's Writ Application to the Louisiana Supreme Court was not timely under state law and therefore the Application did not afford Williams federal tolling consideration.

The State, however, failed to consider that the Writ Application bore a postmark date of February 12, 2004, which rendered it timely under Louisiana law. *See Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 at *1 (5th Cir. Nov. 22, 2005).

The United States Fifth Circuit Court of Appeals has held that a writ application to the Louisiana Supreme Court which fails to comply with La. S. Ct. R. X§5(a) is not properly filed because it is untimely, and post-conviction review is not pending for purposes of AEDPA's statute of limitations and tolling doctrines. *Williams v. Cain*, 217 F.3d at 309-11; *see Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1812 (2005). Rule X§5(a) and (b) require that a writ application seeking review of an appellate court ruling be filed or <u>postmarked</u> within 30 days of the issuance of the appellate court's order to be timely. *Marshall*, at *1.

According to the record, the Louisiana Fifth Circuit resolved Williams's January 13, 2004 Writ Application on January 16, 2004. Under Louisiana law, he had until February 15, 2004, to seek further review in the Louisiana Supreme Court. Williams's subsequent Writ Application was not filed in the Louisiana Supreme Court until March 22, 2004. However, the Application had a postmark date of February 12, 2004. The postmark date was therefore within the 30 day period allowed under La. S. Ct. R. X§5 and considered timely for federal tolling purposes. *Marshall*, at *1.

The tolling afforded Williams by this filing was sufficient to render his current federal petition timely under the AEDPA. Therefore, the State's limitations defense is rejected. The Court must nevertheless consider the State's other defense, that Williams's claims are procedurally barred.

**VI.     Procedural Default**

The State also has raised the defense that Williams is in procedural default on the three claims raised in this federal petition. Williams filed a traverse to the State's opposition in which he argues that the federal interest in resolving the claim should outweigh the state procedural rules.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, the record reflects that the state trial court refused to consider Williams's claims arising from the multiple bill proceedings because the claims were not properly raised on post conviction review pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*.  The Trial Court issued the last reasoned opinion on the issue.  The orders issued by the Louisiana Fifth Circuit and the Louisiana Supreme Court, which did not provide any additional reasons for denial of relief, are presumed to have followed the procedural basis for dismissal.  *See Ylst*.

Therefore, the state courts barred review of Williams's claims based on procedural default pursuant to La. Code Crim. P. Art. 930.3.  This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.

A.    **Independent and Adequate**

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902.  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id*.

As noted above, the basis for dismissal of the claim was the state procedural ground found in La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, which establish that Louisiana law does not provide for review of sentencing errors on post-conviction review.  The federal courts have repeatedly held that *State ex rel. Melinie* and La. Code Crim. P. art. 930.3 are independent and adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus

proceeding.  *See*, *e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016  (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same).

The Court therefore finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* is also independent and adequate to bar review of the merits of Williams's claims by this federal habeas corpus court.

**B.**     **Cause and Prejudice**

To establish a cause for his procedural default, Williams must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading, Williams has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his ability to raise the claim in a procedurally proper manner.

Furthermore, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."  *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a petitioner must first prove that counsel's actions were constitutionally deficient before such a claim can stand as cause for a procedural default).  Williams has not shown cause for his failure to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Williams has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Williams's claims are therefore procedurally barred from review by this court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[36]

## C.    **Fundamental Miscarriage of Justice**

Williams's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor

---

[36]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id. In the instant case, the State has affirmatively raised the procedural default defense.

requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Williams's has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Williams has not met any exception to the procedural bar, his procedurally defaulted claims must be dismissed with prejudice without review of the merits.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Daimon Williams's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____9th_____ day of _____May_____ 2006.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**